Contracts; disputes; deviation in estimated quantities; cardinal change; waiver; estoppel; performance after breach; helium purchase. — On March 21, 1980 the court entered the following order:
Before Davis, Judge, Presiding, Nichols and Kashiwa, Judges.
This case is before us on defendant’s motion for summary judgment, which we sustain. Plaintiff sues under a three-year requirements contract for purchase of helium by defendant from plaintiff. The contract contained a disputes clause and the Armed Services Board of Contract Appeals (ASBCA) adjudicated the aspects of the dispute that were within its jurisdiction, ASBCA No. 20964, 77-1 BCA || 12,359 (1977). The claim here is stated in five counts, of which I states a breach of the nature of a cardinal change, II is for gross misrepresentation in the bid invitation as to the quantities required, III we read as seeking reformation of the contract, IV appears to allege an amendment which plaintiff believes was made, and V seeks relief under the contract for an actual or constructive change order.
The ASBCA found that plaintiff undertook to deliver military specification helium as required over a three-year period as follows, quantities in standard cubic feet (SCF):
First program year: Best estimated quantity (BEQ) 8,606,000, program year maximum 12,909,000; price per SCF, first 400,000 per calendar month $.095; all over 400,000 per calendar month $.050.
Second program year: BEQ 8,471,000, program year maximum 12,706,500, prices same as first year.
Third program year: BEQ 7,296,000 maximum 10,944,000, prices same as first year. Nor could defendant order over 2,400,000 in any single month. By a further provision, all units in excess of the aggregate BEQ of 24,373,000 and up to the total multiyear maximum of 36,559,500 to be priced at $.050.
*671 The board found "no lack of due care” by defendant in arriving at the BEQ figures, but the orders greatly exceeded the BEQ’s in practice, and the three year BEQ figure was reached in 20 months. The dispute relates to the months of June, July, and August 1975, in the third year, after the aggregate BEQ had been exceeded. Defendant’s orders indicated the $.095 rate for the first 400,000, but it refused to pay at that rate, relying on the contract clause last above-mentioned. The board found defendant had made no new offer, nor did plaintiff consider it had received any; no more than a simple clerical error had occurred, which was corrected in August. Plaintiff made deliveries over the monthly and yearly maxima in the first two years, but these were paid for at the $.050 rate. Plaintiff filled all the order it received and never objected that it was being called on to deliver above its maximum obligation, but delivered all the helium asked for "without objection or question.” The board held that there was no constructive or actual change order and plaintiff was entitled to be paid only at the $.050 rate.
The board’s fact findings are not excepted to and are not gratuitous. They all appear to be relevant to the issues before the board. The board took the view that deliveries over the yearly or monthly maxima are not to be eliminated in determining when the three year BEQ was reached, and we agree. There appears to be no error of law in the board’s decision on the change order issue, it is not arbitrary or capricious, and it includes no finding not supported by substantial evidence. Therefore, we affirm the board on our Wunderlich Act review and adopt its findings and conclusions as our own.
As regards the cardinal change and precontract deception issues, we think plaintiffs failure to object, as found, is fatal to its case. Plaintiff certainly knew at least as early as when the three year BEQ was reached, in 20 months, that the BEQ’s were all greatly below the real requirements. Yet it said nothing and went on delivering. Defendant, if timely notified of the existence of a breach claim, could have taken various steps to protect its interests. A party cannot discover a breach and say nothing, continuing to garner the benefits of contract performance. Our leading case on this is *672 Ling-Temco-Vought, Inc. v. United States, 201 Ct. Cl. 135, 475 F.2d 630 (1973). We assume that defendant owed some obligation to make its quarterly estimates as accurate as circumstances permitted. The board found no lack of due care by defendant in arriving at its BEQ figures. Our conclusion would not be affected if, contrary to board findings, the lowness of the BEQ’s was determined to be reprehensible. In Ling-Temco-Vought the plaintiff incurred large expenditures in reliance on false information supplied by a naval officer, but it lost its breach claim by failure to speak out when it knew it had been misled. It was barred by waiver and estoppel. And so here. The more recent case, Applied Devices Corp. v. United States, 219 Ct. Cl. 109, 591 F.2d 635 (1979), recognizes a limited exception to the Ling-Temco-Vought rule, where the contract embodies illegal clauses written in violation of law enacted for the contractor’s protection. This does not apply to mere factual misrepresentations. Applied Devices Corp. reaffirms the existence of the general rule as stated in Ling-Temco-Vought.
We conclude that plaintiff cannot maintain its action here under any of its five counts. Upon consideration of the ASBCA decision, the record, and the briefs, but without oral argument, the defendant’s motion for summary judgment is sustained and the petition is dismissed.